UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND, et al., <br><br>Plaintiffs, <br><br>v. <br><br>EAGLE ENVIRONMENTAL & CONSTRUCTION, et al., <br><br>Defendants. | Case No. 25-cv-02524-KAW <br><br>**ORDER REASSIGNING CASE TO A DISTRICT JUDGE; REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART MOTION FOR DEFAULT JUDGMENT** <br><br>Re: Dkt. No. 14 |

On March 13, 2025, Plaintiffs filed the instant case against Defendants Eagle Environmental & Construction and Ronald Batiste, asserting violations of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Compl., Dkt. No. 1.)

Pending before the Court is Plaintiffs' motion for default judgment. (Mot. for Default J., Dkt. No. 14.) Plaintiffs seek an order requiring Defendants to submit contribution reports or payments for hours worked from May 2016 to the present, and to comply with an audit of payroll records for the purposes of determining whether they made full payment of sums owed for the period of January 1, 2017 through December 31, 2021. (*Id.* at 1.) Defendants are in default and have not filed an opposition. (*See* Dkt. No. 10.)

On September 18, 2025, the Court held a hearing, at which Defendants did not attend. (*See* Dkt. No. 23.) Since Defendant, by virtue of being in default, has not consented to magistrate judge jurisdiction, the Court REASSIGNS this action to a district judge with the RECOMMENDATION that Plaintiffs' motion for default judgment be GRANTED IN PART and DENIED IN PART.

**I.   BACKGROUND**

Plaintiffs are employee benefit plans and their respective trustees. (Compl. ¶ 1.) Plaintiff

Operating Engineers Local 3 Heavy and Highway Trust is a Trust established under the Labor Management and Relations Act ("LMRA"). (Compl. ¶ 2.) The principal offices of Plaintiff Trust Funds are in Alameda, California. (Compl. ¶ 7.)

On November 1, 2002, Defendant Batiste, acting on behalf of Defendant Eagle Environmental Construction, entered into the Independent Northern California Construction Agreement (the "Independent Agreement") with Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO ("Union"). (Compl. ¶ 10; Brown Decl. ¶ 3, Exh. A ("Independent Agreement"), Dkt. No. 14-2.) The Independent Agreement provides that when the individual employer is a corporation, its principal shareholder(s) personally guarantee all payment of wages, fringe benefit contributions, liquidated damages, interest, and collections costs, including but not limited to attorney's fees and audit fees. (Brown Decl. ¶ 3; Independent Agreement ¶ 12.)

The Independent Agreement incorporates the Master Agreement between the Union and the Signatory Associations ("Master Agreement"). (Compl. ¶ 10; Brown Decl. ¶¶ 4-5; Independent Agreement § 2.) The Master Agreement, in turn, incorporates the terms of the Trust Agreements establishing Plaintiff Trust Funds. (Compl. ¶ 12; Brown Decl. ¶ 7, Exh. D ("2023 Master Agreement") § 12.01.03).) The Master Agreement requires that employers make contributions to Plaintiff Trust Funds based on the hours worked by their employees. (Compl. ¶¶ 12-14; Brown Decl. ¶¶ 6; 2023 Master Agreement § 12.01.00.) Contributions are due by the fifteenth day of the month following the month in which hours were worked and are considered delinquent if not received by the twenty-fifth day of that month. (Comp. ¶ 14; Brown Decl. ¶ 8, 2023 Master Agreement § 12.01.02; Brown Decl., Exh. E ("Trust Agreement") § 10(A).) If contributions are delinquent, the Master Agreement and Trust Agreements mandate that the employer pay interest (10% per annum) and liquidated damages (10% prior to litigation and 20% after litigation has been initiated) on the delinquent contributions. (Compl. ¶ 14; Brown Decl. ¶ 8; 2023 Master Agreement §§ 12.13.01-02; Trust Agreement §§ 10(A)(3)-(4).) The Master Agreement further provides for reimbursement of attorney's fees and costs, audit fees, and all other expenses incurred in collection of delinquent contributions. (Brown Decl. ¶ 10; 2023 Master Agreement § 12.13.06.)

Additionally, the Master Agreement provides for an audit of the books and records of signatory employers. (Compl. ¶ 15; Brown Decl. ¶ 13; 2023 Master Agreement § 12.01.04.) The Trust Agreements also provide for an audit of the books and records of signatory employers. (Compl. ¶ 15; Brown Decl. ¶ 14; Trust Agreement § 1.)

On November 29, 2022, Plaintiff Trust Funds' Collection Office sent a letter to Defendants advising that its account had been selected by the Trust Funds for a payroll record audit for the period of January 1, 2017 through December 31, 2021. (Brown Decl. ¶ 15, Exh. F.) Defendants did not respond. (Brown Decl. ¶ 16.) On November 27, 2024, Plaintiffs' counsel sent a demand letter to Defendant Eagle Environmental Construction with attention to Defendant Batiste. (Do Decl. ¶ 7, Dkt. No. 14-4.) Defendants again failed to respond. (Do Decl. ¶ 8.) To date, the requested contribution reports and payroll documents have not been provided and remain outstanding. (Brown Decl. ¶ 19; Quackenbush Decl. ¶ 5, Dkt. No. 14-1.)

On March 13, 2025, the instant case was filed based on the failure to comply with the audit for the period of January 1, 2017 through December 31, 2021, as well as the failure to report and pay contributions for hours worked during the months of May 2016 through January 2025. (Compl. ¶¶ 16-17.) Plaintiffs sought compliance with an audit and the payment of any unpaid contributions (including those found on an audit), interest and liquidated damages on the unpaid contributions, and attorney's fees and costs. (Compl. at 7.)

On April 10, 2025, Defendants were personally served with the complaint and summons. (Dkt. No. 8.) After Defendants failed to respond, Plaintiffs requested entry of default on May 2, 2025. (Dkt. No. 9.) On May 6, 2025, the Clerk entered default as to Defendants. (Dkt. No. 10.) On August 5, 2025, Plaintiffs filed the instant motion for default judgment. The motion for default judgment was mailed to Defendants on August 5, 2025. (Dkt. No. 17.) To date, Defendants have neither appeared nor filed an opposition to Plaintiffs' motion for default judgment.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Id.* at

3

1   999 (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986)).

2   Before assessing the merits of a default judgment, a court must confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties, as well as ensure the adequacy of service on the defendant. See *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the Eitel factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III.   DISCUSSION

#### A.   Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### i.   Subject Matter Jurisdiction

In this action, Plaintiffs assert claims to enforce the terms of their Agreements and to enforce provisions of ERISA. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132, which provides that plan fiduciaries can bring civil actions to enforce the terms of the plan. Further, jurisdiction exists in this Court over all claims by virtue of the LMRA, specifically 29 U.S.C. § 185, as Plaintiffs seek to enforce the terms and conditions of a collective bargaining agreement.

### ii. Personal Jurisdiction

The Court can exercise personal jurisdiction over Defendants pursuant to Section 502(e)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Under Section 502(e)(2), an action may be brought against a defendant:

> … in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261 (9th Cir. 1992); *Schuett v. FedEx Corporation Retirement Appeals Comm.*, 2015 WL 4484153, at *5 (N.D. Cal. July 22, 2015) ("service on a defendant in an ERISA case anywhere in the United States is sufficient to establish personal jurisdiction, and there is no need to engage in the 'minimum contacts' analysis") (emphasis added); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Here, Plaintiff Trust Funds are administered in this district at their principal place of business in Alameda, California. (Compl. ¶ 7.)

Venue is conferred upon this court by ERISA § 502, 29 U.S.C. § 1132. Where an action is brought under ERISA § 502 in a district court of the United States, it may be brought at the plaintiff's discretion, in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. Again, because Plaintiff Trust Funds are administered in Alameda, California, this matter is properly assigned to this district.

### iii. Service of Process

Defendants were personally served with the complaint and summons. (Dkt. No. 8.) Defendants failed to answer, and default was duly entered. (Dkt. No. 10.)

## B. Application to the Case at Bar

Since the Court has jurisdiction in this matter, this Court must turn to the *Eitel* factors to determine whether the entering of a default judgment is appropriate in this matter.

### i. Prejudice to Plaintiff

Federal courts have exclusive jurisdiction for claims arising under ERISA, so denial of Plaintiffs' motion would leave them without a remedy. *Bd. of Trustees of U.A. Local No. 159*

5

*Health & Welfare Trust Fund v. RT/DT, Inc.*, C 12-05111 JSW, 2013 WL 2237871 at *4 (N.D. Cal. May 21, 2013). Plaintiffs would, therefore, be prejudiced if the Court did not enter default judgment.

### ii. Merits of Plaintiff's Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors focus on the merits of Plaintiffs' substantive claim and the sufficiency of the Complaint. *Eitel*, 782 F.2d at 1471–72. A party seeking default judgment must state a valid claim upon which it may recover. *Walters v. Statewide Concrete Barrier, Inc.*, 2005 U.S. Dist. LEXIS 49433, at *8 (N.D. Cal. Sept. 2, 2005).

An order allowing Plaintiffs to audit Defendants' records is warranted as it is "well within the authority of the trustees as outlined in the trust documents" and is part of "proper plan administration." *Cent. States, Se. v. Sw. Areas Pension Fund v. Cent. Transp. Inc.*, 472 U.S. 559, 582 (1985). Further, if the audit finds that there are delinquent contributions, courts have "retain[ed] jurisdiction to amend a default judgment to more accurately reflect the plaintiffs' damages where some aspects of damages have not been determined." *Operating Eng'rs' Health & Welfare Trust Fund v. Cal Excavation & Underground, Inc.*, Case No. 18-cv-6530-JCS, 2020 U.S. Dist. LEXIS 32149, at *18 (N.D. Cal. Jan. 28, 2020); *see also Bd. of Trs. of the Laborers Health & Welfare Trust Fund for N. Cal. v. Atoll Topui Island, Inc.*, Case No. 06-cv-3059-SBA, 2007 U.S. Dist. LEXIS 4307, at *2 (N.D. Cal. Jan. 22, 2007) (permitting the plaintiffs "to move the Court to amend the Judgment to include additional amounts found owing following the audit").

Here, Defendant Eagle Environmental Construction entered into an Independent Agreement, thus becoming bound to the Master Agreements and Trust Agreements. (Compl. ¶¶ 10, 12.) The Independent Agreement also provided that the principal shareholder -- alleged to be Defendant Batiste -- personally guaranteed all payment of wages, fringe benefit contributions, liquidated damages, interest, and collection costs. (Compl. ¶ 11; Independent Agreement ¶ 12.) Pursuant to the Master and Trust Agreements, Defendant Eagle Environmental Construction was required to make timely contributions and comply with audit requests. (Compl. ¶¶ 13-15.) Defendants have failed to comply with an audit of their payroll records for the period of January 1,

6

2017 through December 31, 2021, as well as failed to report and pay contributions for hours worked by their employees during the period of May 2016 through January 2025. (Compl. ¶¶ 16-17.) Accordingly, Plaintiffs have successfully pled a case under ERISA entitling them to an audit. The second and third *Eitel* factors weigh in favor of granting their motion for default judgment.

### iii.  Sum of Money at Stake

The fourth *Eitel* factor assesses the reasonableness of the potential award if a default judgment is entered. In making this assessment, the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F.2d at 1471. If the sum of money at issue is reasonably proportionate to the harm caused by Defendant's actions, properly documented, and contractually justified, then default judgment is warranted. *Bd. of Trs. of Cal. Metal Trades v. Pitchometer Propeller*, 1997 WL 797922, at *2 (N.D. Cal. Dec. 15, 1997). A default judgment is only disfavored when a large amount of money is involved or is unreasonable in light of Defendant's actions. *Truong Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). In determining if the amount at stake is reasonable, the Court may consider a plaintiff's declarations, calculations, and other documentation of damages. *Id*.

Here, Plaintiffs seek an injunction as well as attorney's fees of $3,020.50 and $1,421.42 in costs. (Mot. for Default J. at 10.) After some adjustments as discussed below, the Court finds that the amount sought is reasonable because the fees and costs were incurred due to Defendants' failure to comply with the audit. Accordingly, this factor weighs in favor of default judgment.

### iv.  The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts of the case. Defendants have not participated in this action and have not made any attempt to contest any of Plaintiffs' material facts or legal assertions or moved to set aside the entry of default despite being served with all papers, including the instant motion for default judgment. Thus, the possibility of a dispute regarding Defendant's liability for damages is unlikely, and this factor weighs in favor of default judgment.

### v.  Whether Default was a Result of Excusable Neglect

The sixth *Eitel* factor contemplates the possibility that Defendants' default was the result

7

of excusable neglect. Under this analysis, the Court considers whether Defendants were put on adequate notice to apprise it of the pendency of the action brought against it. *Phillip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). In addition, the Court also considers whether the circumstances surrounding Defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default cannot be attributed to excusable neglect where defendants were properly served with the complaint, the notice of entry of default, and the papers in support thereof).

Here, Defendants were properly served with the summons and complaint, as well as with the instant motion for default judgment, and have still failed to appear in this action. Consequently, there is nothing to suggest that Defendants' failure to appear and litigate this matter is based on excusable neglect. This factor weighs in favor of default judgment.

### vi. Federal Rules Preference for a Decision on the Merits

After an examination of these facts in the aggregate, this Court finds that *Eitel* factors one through six outweigh the Federal Rules of Civil Procedure's preference for a decision on the merits. The Court therefore recommends that default judgment be granted.

### IV. DAMAGES AND INJUNCTIVE RELIEF

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit. *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Again, Plaintiffs in this case seek an order that Defendants comply with Plaintiffs' request for an audit, including providing contribution reports for May 2016 through the present. (Pls.' Mot. for Default J. at 14.) Plaintiffs also request attorney's fees and costs incurred to date.

As discussed above, Plaintiffs are entitled to an injunction in this case. It is also recommended that the court retain jurisdiction over this case to allow Plaintiffs to submit a future

motion to amend the judgment after they complete the audit if the audit shows that there are still unpaid contributions.

Plaintiffs also seek reasonable attorney's fees and costs per § 502(g)(2).  (Pls.' Mot. for Default J. at 12.)  Section 502(g)(2) mandates attorney's fees and costs in a successful action to enforce § 515 for unpaid contributions.  Here, however, Plaintiffs have not demonstrated that there are unpaid contributions; indeed, the very purpose of the audit is to determine whether there are unpaid contributions.  Thus, § 502(g)(2) does not apply.

Section 502(g)(1), however, allows a court, in its discretion, to award reasonable attorney's fees and costs in a successful ERISA action.  *See Cal Excavation & Underground, Inc.*, 2020 U.S. Dist. LEXIS 32149, at *15.  In determining whether to award attorney's fees under this section, the court considers: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions."  *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).

The Court finds that the *Hummell* factors weigh in favor of awarding attorney's fees.  First, Defendants are culpable because they failed to submit to the audit.  Second, Defendants' financial status is unknown because they have failed to participate in the audit.  Third, an award of fees may deter future violations by other signatories.  Fourth, while the legal issue is not significant, audits are an important tool for compliance.  *See Cal Excavation & Underground*, 2020 U.S. Dist. LEXIS 32149, at *16.  Ensuring that employer signatories comply with audits is therefore beneficial to all participants and beneficiaries of ERISA plans, as it ensures that payments are being made in full.  Finally, Defendants have not attempted to defend its position on the merits; rather, Defendants have repeatedly promised to participate in the audit, but failed to do so.  Accordingly, the Court recommends granting Plaintiffs' request for attorney's fees.

Once fees under ERISA are awarded, the court must calculate the lodestar amount to assess the reasonableness of attorney's fees.  *Credit Managers Ass'n of S. Cal.,* 25 F.3d at 750.

9

1     The lodestar amount is determined by "multiplying the number of hours reasonably expended on
2     the litigation by a reasonable hourly rate." *Id.* (internal quotations omitted).  In awarding
3     attorney's fees, courts must look to the prevailing market rates in the relevant community. *Bell v.*
4     *Clackamas Cnty.,* 341 F.3d 858, 860 (9th Cir. 2003).

5     Here, Plaintiffs seek hourly rates of $325-375 for Attorney Tino X. Do and $185-205 for
6     Paralegal Alicia Wood.  (Do Decl. ¶ 17.)  Courts in this district have found these rates to be
7     reasonable.  *See Operating Eng'rs Health & Welfare Tr. Fund for N. Cal. v. Precision Drilling,*
8     *Inc.*, No. 21-cv-07893-EMC, 2025 U.S. Dist. LEXIS 75735, at *18 (N.D. Cal. Apr. 21, 2025)
9     (approving shareholder rates of $250-375, associate rates of $245-375, and paralegal rates of
10    $135-205).  Considering the experience of counsel, the Court finds that the hourly rates are
11    reasonable and consistent with the prevailing market rates in the Northern District.

12    Plaintiffs also provide their billing records for time spent on this case.  Upon review, the
13    Court generally finds that the number of hours billed is reasonable.  That said, Plaintiffs also
14    include clerical work by Ms. Woods, such as calendaring, e-filing, and mailing documents.  Such
15    clerical tasks are not compensable.  *See Rodgers v. Claim Jumper Rest., LLC*, No. 13-CV-5496
16    YGR, 2015 U.S. Dist. LEXIS 54164, at *25 (N.D. Cal. Apr. 24, 2015) ("purely secretarial or
17    clerical tasks are generally not recoverable in a motion for attorney's fees and should instead be
18    considered a part of normal overhead costs"); *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir.
19    2009) (agreeing that the "filing, transcript, and document organization time was clerical in nature
20    and should have been subsumed in firm overhead rather than billed at paralegal rates"); *CNC*
21    *Software, Ltd. Liab. Co. v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-cv-02488-EMC, 2023 U.S. Dist.
22    LEXIS 83880, at *26 (N.D. Cal. May 12, 2023) (reducing time spent for clerical tasks including
23    calendaring).)

24    Accordingly, the Court reduces the following entries because they include clerical work:

| Date: | Task: | Hours Claimed: | Hours Permitted: | Hours Reduced: | Monetary Deduction: |
|---|---|---|---|---|---|
| 4/11/2025 | E-mails with Dietz Investigation regarding proofs of service, along with declaration.  Compile relevant documents and e-file summons | .4 | .2 | .2 | $41.00 |

| | | | | | |
|---|---|---|---|---|---|
| | | returned executed. Calendar relevant deadlines. | | | | |
| | 6/3/2025 | Review file regarding upcoming litigation deadlines. Telephone call with T. Do regarding same and further handling. Draft and e-file proof of service regarding Clerk's notice of entry of default as to Defendants. Issue same to Defendants via U.S. Post Office. Draft and e-file request to continue case management conference. Issue same to judge's proposed order unit. Issue same to Defendants via U.S. Post Office. | 1.6 | 1.0 | .6 | $123.00 |
| | | | | | **Total:** | **$164.00** |

Taking into account this deduction, the Court recommends that Plaintiffs' request for attorney's fees be reduced from $3,020.50 to an award of **$2,856.50** in attorney's fees.

Finally, Plaintiffs seek reimbursement of costs in the amount of $1,421.42. (Pls.' Mot. for Default J. at 14.) This consists of investigation and service fees, legal research, and filing fees. (Do Decl. ¶ 21, Exh. F.) Such costs are recoverable. *See Pension Plan for Pension Tr. Fund for Operating Eng'rs v. J&K Sweeping*, No. 14-cv-01179-JCS, 2014 U.S. Dist. LEXIS 129691, at *22 (N.D. Cal. Aug. 22, 2014) ("With respect to Plaintiffs' request for costs for messenger service, legal research, and investigation, such costs are available on the basis that they are generally billed as attorney's fees."). Thus, Plaintiffs are entitled to **$1,421.42** in costs.

## V.   CONCLUSION

For the reasons stated above, the undersigned RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED. Defendants should be ordered to immediately comply with Plaintiffs' audit request, including providing contribution reports for May 2016 through the present. Defendants should also be ordered to pay **$2,856.50** in attorney's fees and **$1,421.42** in costs, for a total of **$4,277.92**. Finally, the district court should retain jurisdiction to allow Plaintiffs to submit a further motion to amend the judgment should the audit reveal unpaid contributions.

No later than 3 days from the date of this report and recommendation, Plaintiffs are instructed to serve Defendants with a copy by any means reasonably calculated to provide actual notice and file a proof of service to that effect.  Any party may file objections to these recommendations within 14 days of being served with a copy.  *See* 28 U.S.C. § 636(b); *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b); N.D. Civil L.R. 72-3.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *IBEW Local 595 Trust Funds v. ACS Controls Corp.*, No. C-10-5568, 2011 WL 1496056, at *3 (N.D. Cal. Apr. 20, 2011).

IT IS SO RECOMMENDED.

Dated: October 16, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge